**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4720-16T4

STEVEN A. ROBINSON, a/k/a
STEVEN ROBINSON and NATALIE
ROBINSON, his spouse,

     Plaintiffs-Appellants,

v.

THE PORT AUTHORITY OF NY & NJ
and T.U.C.S. CLEANING SERVICE, INC.,
a/k/a T.U.C.S. CLEANING SERVICES,

     Defendants-Respondents.

_____

Argued October 31, 2018 – Decided November 29, 2018

Before Judges Koblitz, Currier, and Mayer.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. L-4717-15.

Michael N. Beukas argued the cause for appellants (Davis, Saperstein & Salomon, PC, attorneys; Luis L. Haquia, on the briefs).

Gerald Kaplan argued the cause for respondent The Port Authority of NY & NJ (Methfessel & Werbel,

attorneys; Gerald Kaplan and Steven A. Unterburger, of counsel and on the brief).

Daniel Kaye argued the cause for respondent T.U.C.S. Cleaning Service, Inc., a/k/a T.U.C.S. Cleaning Services (Viscomi & Lyons, attorneys; Daniel Kaye, on the brief).

PER CURIAM

Plaintiffs Steven and Natalie Robinson[1] appeal from summary judgment orders dated June 9, 2017 entered in favor of defendant The Port Authority of NY & NJ (Port Authority) and defendant T.U.C.S Cleaning Service, Inc. a/k/a T.U.C.S. Cleaning Services (T.U.C.S.). We affirm.

On January 9, 2015, plaintiff, who was on his way to work, slipped on a sidewalk owned by Port Authority. Plaintiff's fall occurred at 7:30 a.m. during a snow event, and he suffered an injury to his right ankle. According to plaintiff, the snow fall on January 9 concealed ice that formed on the sidewalk from a prior snow storm on January 6, 2015.

T.U.C.S. contracted with the Port Authority to provide cleaning services. The contract required T.U.C.S. to remove ice and snow from the Port Authority's sidewalks upon request by the Port Authority. There was no evidence the Port

_____

[1] Natalie Robinson filed a per quod claim. In this opinion, we refer to the injured party, Steven Robinson, as plaintiff.

A-4720-16T4

Authority made any request for snow or ice removal of T.U.C.S. on January 9, 2015.

Plaintiffs filed a complaint against the Port Authority and T.U.C.S., claiming they were negligent in remediating snow and ice conditions on Port Authority property. The Port Authority and T.U.C.S. filed answers, and the parties exchanged discovery.

Before any depositions were conducted, plaintiffs retained a liability expert. Plaintiffs' liability expert, a civil engineer, who opined that ice or snow remained on the Port Authority sidewalk from the January 6 snow fall, and the snow or ice melted and refroze over the next three days. The expert relied on meteorological and climatological data from the National Oceanic and Atmospheric Association from January 6 through January 9, 2015, and concluded the snow or ice leftover from January 6, rather than the snowfall on January 9, caused plaintiff's fall.

Subsequent to the expert issuing his liability report, plaintiffs retained WeatherWorks to review weather conditions from January 6 to 9. In its report, WeatherWorks noted between 0.8 and 1.1 inches of snow fell in the area on January 6. Plaintiffs proffered WeatherWorks' report to support the expert's liability theory.

A-4720-16T4

After the completion of discovery, defendants moved for summary judgment. Defendants argued the findings by plaintiffs' expert constituted net opinion and were therefore inadmissible. Defendants also asserted there was no evidence in the record to support plaintiffs' theory of liability. In addition, T.U.C.S separately argued summary judgment was appropriate under New York contract law.[2]

The motion judge found there were no issues of material fact for a jury to resolve because New York's "storm-in progress" doctrine barred liability against defendants.[3] The judge also concluded the expert report was an inadmissible net opinion because the expert lacked a factual and scientific foundation to support his theory of liability. The judge determined plaintiffs' expert was not qualified to employ meteorological and climatological data to prove his theory of liability.

Plaintiffs appeal, asserting the judge erred in rejecting the expert report as a net opinion. In addition, plaintiffs argue the judge improperly granted summary judgment because there were disputed issues of material fact. Plaintiffs also claim the judge erroneously applied the procedural law of New

[2] On appeal, plaintiffs do not challenge the judge's summary judgment determination as to T.U.C.S. based on the lack of a contractual obligation to perform snow or ice removal absent a request by the Port Authority.

[3] The parties stipulated New York substantive law was applicable in this case.

Jersey, rather than the procedural law of New York, in reviewing defendants' summary judgment motions.

To begin, we examine which state's procedural law governed the trial court's review of the summary judgment motions. Our Supreme Court has long held "the procedural law of the forum state applies even when a different state's substantive law must govern." North Bergen Rex Transp., Inc. v. Trailer Leasing Co., 158 N.J. 561, 569 (1999); see also Du-Wel Prods., Inc. v. United States Fire Ins. Co., 236 N.J. Super. 349, 362 (App. Div. 1989) (holding this principle is "virtually axiomatic"). In Heavner v. Uniroyal, Inc., the Court concluded "[i]t would be an impossible task for the court of [a forum] state to conform to procedural methods and diversities of the state whose substantive law is to be applied." 63 N.J. 130, 136 (1973). In this case, plaintiffs' chosen forum is New Jersey and, in accordance with well-settled case law, New Jersey procedural law applies.

Under New Jersey law, a motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). We review a trial court's decision

5

granting summary judgment de novo, employing the same standard used by the trial court. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016).

A trial court's decision to strike expert testimony is entitled to deference on appellate review. See Townsend v. Pierre, 221 N.J. 36, 52-53 (2015). We apply an abuse of discretion standard in assessing whether a trial court properly excluded expert testimony in a civil case. See In re Accutane Litigation, 234 N.J. 340, 348 (2018).[4] When a trial court is "confronted with an evidence determination precedent to ruling on a summary judgment motion," the court "must address the evidence decision first." Estate of Hanges v. Metro. Prop. & Cas. Inc., 202 N.J. 369, 384-85 (2010).

Applying this standard of review, we examine the judge's rejection of the expert report as a net opinion. N.J.R.E. 702 imposes three requirements for admitting expert testimony: "(1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must

---

[4] In re Accutane Litigation addressed the exclusion of scientific expert testimony that presented a novel theory of medical causation in a civil toxic tort litigation. The expert's opinions in this case were not novel and thus whether to conduct an evidentiary hearing under Rule 104 was left to the discretion of the trial court. See Kemp ex rel. Wright v. State, 174 N.J. 412, 432 (2002) (stating "the need for a [Rule 104] hearing is remitted to the trial court's discretion").

be at a state of the art such that an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise to offer the intended testimony." Creanga v. Jardal, 185 N.J. 345, 355 (2005) (quoting Kemp, 174 N.J. at 424).

Where an expert's findings are not supported by proper factual evidence, it is a net opinion. Townsend, 221 N.J. at 58. An expert's opinion "'is excluded if it is based merely on unfounded speculation and unquantified possibilities.'" Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div. 1997) (quoting Vuocolo v. Diamond Shamrock Chem. Co., 240 N.J. Super. 289, 300 (App. Div. 1990)). Based upon the weight a jury may give to expert testimony, "a trial court must ensure that an expert is not permitted to express speculative opinions or personal views that are unfounded in the record." Townsend, 221 N.J. at 55. An expert must provide the "why and wherefore" of his or her opinion, and failing to do so renders the expert "nothing more than an additional juror." Jimenez v. G.N.O.C., Corp., 286 N.J. Super. 533, 540 (App. Div. 1996). If the trial court determines the expert's report is a net opinion, the testimony of the expert is inadmissible. Buckelew v. Grossbard, 87 N.J. 512, 524 (1981). Without the testimony of an expert to support a theory of liability, no reasonable jury could find negligence, and summary judgment should be granted.

A-4720-16T4

Here, the judge determined the expert's civil engineering background failed to support his meteorological or climatological conclusions. The expert relied solely on his discussion with plaintiff, wherein plaintiff told the expert he felt ice after falling, and weather data. Based on the fluctuation in temperature over a three-day period, the expert theorized untreated snow on the Port Authority's sidewalk from January 6 melted and refroze between January 6 and January 9.

In rejecting the expert's theory, the judge determined the expert's opinion lacked a proper factual foundation because there was no evidence in the record that snow remained on the sidewalk after the January 6 storm. The judge also concluded the expert could not testify regarding meteorological or climatological conditions because such opinions were beyond the scope of a civil engineer's expertise.

The judge noted, "to go from January 6th to January 9th you need to have more than just a theory . . . there's no facts to support that. There's only these really vague inferences and we don't know what happened on January 6th. We don't even know if there was an ice condition." The judge further found there must be more than "just a possibility" the ice on January 6 was still present on January 9, and therefore, more scientific support was required to present the

8

expert's theory to a jury. On this record, there was no evidence the Port Authority failed to treat any snow or ice on the sidewalk from the January 6 storm, and no evidence suggesting ice was present prior to the January 9 snowfall.

Plaintiffs argue the judge should have conducted a N.J.R.E. 104 hearing before ruling the expert report was net opinion. None of the parties asked the judge to conduct such a hearing prior to considering the summary judgment motions. See Townsend, 221 N.J. at 48-49 (reinstating summary judgment in the absence of a Rule 104 hearing where the trial court held the expert was precluded from offering an inadmissible net opinion). Nor did plaintiffs submit a supplemental certification from the expert explaining why he could review weather data and render a causation opinion based on evidence rather than speculation. We discern no error in the judge's decision not to conduct a Rule 104 hearing under the circumstances in this case.

We are satisfied plaintiffs' civil engineering expert lacked the requisite knowledge, skill, experience, training, or education to testify regarding weather conditions and causally connect his speculative theory of liability to plaintiff's fall. The expert's opinions were based on assumptions and completely lacking

9

in facts contained in the record. As such, the expert's opinions were inadmissible.

Since the expert's report was inadmissible, plaintiff was unable to prove he fell on ice left over from the earlier snowstorm, and defendants were entitled to summary judgment under New York substantive law. New York law applies the "storm-in progress" doctrine, stating a landowner "will not be liable in negligence for a plaintiff's injuries sustained as the result of an icy condition occurring during an ongoing storm or for a reasonable time thereafter." Sherman v. N.Y. Thruway Auth., 52 N.E.3d 231, 232 (N.Y. 2016) (quoting Solazzo v. N.Y.C. Transit Auth., 843 N.E.2d 748, 749 (2005)). Because plaintiff fell during the ongoing snowstorm on January 9, his claim is barred as a matter of law under New York's "storm-in progress" doctrine.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4720-16T4